UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD A. SPANN-EL,<br><br>    Plaintiff,<br><br>    v.<br><br>MIAMI CORRECTIONAL FACILITY,<br>et al.,<br><br>    Defendants. | CAUSE NO. 3:22-CV-450-JD-MGG |

OPINION AND ORDER

Richard A. Spann-El, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 44.) In the original screening order, he was granted leave to proceed on a claim for injunctive relief against the Warden of Miami Correctional Facility ("MCF") related to his ongoing need for mental health treatment. (ECF 2.) After he was transferred to another correctional facility, his claim for injunctive relief against the Warden of MCF was dismissed as moot. (ECF 41.) He requested leave to amend his complaint to assert a claim for damages related to the care he received during the time he was incarcerated at MCF, and the court granted his request. (*Id.*) He then filed this amended complaint. (ECF 44.)

Under 28 U.S.C. § 1915A, the court must screen the amended complaint to determine whether it states a claim for relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Spann-El is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Spann-El is currently incarcerated at New Castle Correctional Facility. His claims stem from events occurring at MCF between March 2020 and November 2022. He claims that during this period, he was experiencing significant mental health problems, including post-traumatic stress disorder, anxiety, depression, and manic episodes. He claims he was having difficulty eating and sleeping and had little interest in keeping himself clean. He claims he is a recovering drug addict and that he often resorted to smoking "spice"[1] to self-medicate. He claims he met with Mental Health Specialists Baili Beck and Sype (first name unknown) multiple times in 2020, 2021, and 2022 and requested medication, counseling, and other treatment to address his symptoms. They allegedly told him that Dr. Pupko[2] (first name unknown) would not give him any medication because of his use of spice; however, he claims he only resorted to using the spice because he was not given prescription medication to address his symptoms. He also claims these Defendants told him simply to "breath" and

---

[1] "Spice" is a synthetic form of marijuana. *United States v. Siegel*, 753 F.3d 705, 713 (7th Cir. 2014)

[2] He alternatively refers to this person as a doctor and a "mental health specialist." (ECF 44 at 1, 8, 11.) Based on his allegations, the court presumes this individual is a mental health professional who could prescribe medication.

"relax," but by his account his mental health problems were "far greater" than this and could not be addressed with simple breathing techniques.

In 2021, he began to have suicidal ideations, which he allegedly told Mental Health Specialists Beck and Sype about on several occasions. He claims they would ask him if he had devised a specific means of committing suicide, and because he did not have a specific plan in place at that time, they allegedly dismissed his concerns. As a result of the lack of treatment and additional problems he experienced in prison, including witnessing another inmate die and being attacked by other inmates, his mental health continued to deteriorate.

Around July 2022, he met with Captain Moroson and another officer and told them about the emotional problems he was having and threatened to hang himself. He claims they told him he would be seen by Dr. Pupko the following day. He claims the officers then placed him in segregation but did not take any other precautions, such as putting him on suicide watch. The following day, no one came to take him to the doctor so he hit the intercom button in his cell around 1:30 p.m. and spoke with Officer Broomfield (first name unknown). He told her he was supposed to be seen by Dr. Pupko for mental health problems and threatened to hang himself. She asked how he intended to hang himself and he told her he was making a noose out of his hair. She did not respond, and he heard nothing further until around 5:00 p.m., when he was allegedly done making the noose. He hit the intercom button again and threatened to hang himself, but was informed by Officer Broomfield that Dr. Pupko and all the other

mental health staff had gone home for the day. He allegedly told her to send all his belongings to his family because he was going to commit suicide. He claims she "made no effort" to contact anyone or otherwise assist him.

About 15 minutes later, he attempted to hang himself. Two officers happened to be walking by his cell and ran to assist him. He claims Dr. Verdon (first name unknown) and Warden William Hyatte were both notified about his suicide attempt and his ongoing mental health issues, but they allegedly did nothing to assist him. He claims after his suicide attempt he was "strip-celled," apparently meaning he was limited in the items he could have in his cell, but he was not placed on suicide watch or monitored regularly. A few days later, he tried to commit suicide again by putting a piece of plastic over his face. A guard found him "semi-unconscious" and obtained medical care for him. After this second attempt, he was placed on suicide watch. A few months later, he was transferred to a different facility. Based on these events, he sues Mental Health Specialists Sype and Beck, Drs. Pupko and Verdon, and Warden Hyatte seeking monetary damages and other relief.[3]

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege: (1) he had an objectively seriously medical need; and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a

---

[3] He appears to request some form of medical treatment, but as the court has previously told him, if he believes his Eighth Amendment rights are being violated in connection with medical care he is receiving at New Castle, he must assert such a claim in a new lawsuit filed in the Southern District of Indiana, where he is in custody.

4

physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). But they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. This includes appropriate measures to address the risk of self-harm from suicide. *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021). To state a claim for deliberate indifference to the risk of suicide, the plaintiff must allege that the defendant "(1) subjectively knew the prisoner was at substantial risk of suicide and (2) intentionally disregarded the risk." *Id.* at 566 (internal alteration omitted).

Giving Mr. Spann-El the inferences to which he is entitled at this stage, he has plausibly alleged that Mental Health Specialists Beck and Sype and Drs. Pupko and Verdon denied him adequate medical treatment for a serious medical condition. Specifically, he claims all of these Defendants were aware that he was experiencing severe depression, anxiety, and mania and had suicidal ideations, but they did not provide him with any medication, counseling, or other treatment. It is not evident that Mental Health Specialists Beck and Sype had the ability to prescribe medication, but it can be inferred from his allegations that they could have referred him for counseling or taken other steps to alert their superiors to his need for treatment. Instead, in the face of his serious issues, they allegedly told him simply to "breath" and "relax," and brushed

5

off his threats of suicide. As a result, his mental health problems worsened and he tried to commit suicide twice. He will be permitted to proceed on a claim for damages against these Defendants.[4]

He further claims that Officer Broomfield, Captain Moroson, and Warden Hyatte were all aware that he posed a risk of suicide, but deliberately turned a blind eye to that risk. Specifically, he claims Officer Broomfield did nothing after he reported making a noose to hang himself, which he later used to try to commit suicide. Captain Moroson and Warden Hyatte allegedly knew about his mental health issues and suicidal ideations but did not place him on suicide watch or take other steps to monitor him after his first suicide attempt. Thereafter, he made another attempt on his life. He will be permitted to proceed on claim for damages against these Defendants.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Dr. Pupko (first name unknown), Baili Beck, Mental Health Specialist Sype (first name unknown), and Dr. Verdon (first name unknown) in their personal capacities for monetary damages for failing to provide him with constitutionally adequate treatment for mental health problems;

---

[4] Mr. Spann-El is not specific about some of the dates when these events occurred, and some of them appear to have occurred outside the two-year window that applies to actions filed under 42 U.S.C. § 1983. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (holding that 42 U.S.C. § 1983 actions borrow the statute of limitations for state personal injury claims, which in Indiana is two years). However, dismissing a complaint as untimely at the pleading stage is "an unusual step" that is appropriate only when it is "clear from the face of the complaint" that the claims are "hopelessly time-barred." *Cancer Found., Inc. v. Cerberus Cap. Mgmt.*, 559 F.3d 671, 674 (7th Cir. 2009). That standard is not met here, as at least a portion of the events occurred within the limitations period, including his two suicide attempts which allegedly resulted from the lack of treatment over the course of years.

(2) GRANTS the plaintiff leave to proceed against Officer Broomfield (first name unknown), Captain Moroson (first name unknown), and Warden William Hyatte in their personal capacities for monetary damages for deliberate indifference to his risk of suicide;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Broomfield (first name unknown), Captain Moroson (first name unknown), and Warden William Hyatte at the Indiana Department of Correction and to send them a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Pupko (first name unknown), Baili Beck, Mental Health Specialist Sype (first name unknown), and Dr. Verdon (first name unknown) at Centurion Health and to send them a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(7) ORDERS Dr. Pupko, Baili Beck, Mental Health Specialist Sype, Dr. Verdon, Officer Broomfield, Captain Moroson, and Warden William Hyatte to respond, as

provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

    SO ORDERED on March 22, 2023

                                              /s/JON E. DEGUILIO
                                              JUDGE
                                              UNITED STATES DISTRICT COURT